## 45817. LEWIS v. GRIFFIN.
### (376 SE2d 364)

HUNT, Justice.

This appeal raises issues involving the extent of habeas corpus jurisdiction and the treatment of mentally-disabled prisoners. The habeas trial court held the petitioner was denied parole because the state had no facilities to treat him and ordered the state to involuntarily commit him to the Veterans Administration hospital. The state appeals.[1]

In 1956, Fred Griffin, Jr., suffered severe head injuries in an auto accident, and was medically discharged from the army. That same year, while still a minor, he was convicted of murder in Walton County and sentenced to life in prison. Parole was granted in 1970 but was revoked in 1976, for his being absent without leave from a mental hospital and because he was charged with making terroristic threats. He suffers from chronic paranoid schizophrenia.

In this 1986 habeas corpus petition, he claims that he has been denied equal protection because the state refuses to parole him only because there is no appropriate state facility in which he could be housed. Griffin, as a veteran, is entitled to hospitalization for his mental condition through the Veterans Administration, but that federal agency will not admit him until he is released or paroled from the state prison system. It is undisputed that Griffin must be institutionalized because of his condition.

1. We agree with the state's argument that petitioner's claim for release on parole is not cognizable in habeas and as to that remedy his petition should have been dismissed. He does not challenge the validity of his sentence or his incarceration under that sentence. He challenges only the failure of the Board of Pardons and Paroles to release him on parole. Thus his remedy lies, not in habeas corpus, OCGA § 9-14-42,[2] but in a suit against the agency that is denying him the relief he seeks, the Board of Pardons and Paroles.[3] *Edwards v.*

---

[1] The petitioner's motion to dismiss is denied.

[2] OCGA § 9-14-42 (a) provides: "Any person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of this state may institute a proceeding under this article."

[3] His success in an action against the board would be dependent upon his demonstrating a gross abuse of discretion by that board in denying the relief sought. See OCGA § 42-9-42 (c), (d); *Justice v. State Board of Pardons and Paroles*, 234 Ga. 749 (218 SE2d 45)(1975).

*Malmberg*, 241 Ga. 469 (246 SE2d 321) (1978); *Brown v. Caldwell*, 231 Ga. 795, 796 (204 SE2d 137) (1974). Compare *Justice v. State Board of Pardons and Paroles*, 234 Ga. 749 (218 SE2d 45) (1975). See generally OCGA § 42-9-42 (c), (d).

2. Viewing petitioner's claim as challenging the failure of the warden to provide adequate treatment for his mental condition, the trial court attempted to rest jurisdiction of the petitioner's suit under the Mental Health Act, OCGA § 37-2-1 et seq. Under OCGA § 42-5-52 (d), the Department of Corrections may transfer a mentally-ill petitioner to the custody of the Department of Human Resources until his sanity is restored, and then have him returned to the Department of Corrections for completion of his sentence.[4] In addition, OCGA § 17-7-31 provides for treatment of those found guilty but mentally ill or retarded under rules and regulations of the Department of Corrections in cooperation with the Department of Human Resources. Both of these code chapters specifically invoke parts of Chapter 37, providing for mental health.

A perusal of these code provisions reveals a public policy of this state to provide some form of mental treatment to its citizens, including prisoners.[5] Therefore, reliance by the trial court upon the Mental Health Act for jurisdiction to consider the adequacy of the treatment being afforded Lewis by the Department of Corrections, was not error. Whatever remedies may be available to the court under this act, ordering the department to release the petitioner to a federal agency is not among them. But see OCGA § 42-5-51 (d).

We, therefore, vacate the judgment and remand the case to the trial court for proceedings concerning further treatment of the petitioner.[6] Such proceedings shall be without prejudice to the petitioner's right to pursue any other remedies he may have in a proper suit against the Board of Pardons and Paroles.

*Judgment reversed and case remanded. All the Justices concur.*

---

[4] The state relies on the language of that code section, which provides that prior to completion of his sentence, a prisoner may not be released from commitment under the Mental Health Act procedures. That does not mean, however, that the Mental Health Act does not apply to prisoners. While all of the provisions of the act are not applicable, whatever rights a prisoner has to be treated, voluntarily or involuntarily, for his mental illness entitle him to some of the benefits of the Act.

[5] OCGA § 17-7-31 (g) (2) provides that a prisoner incarcerated after being found guilty but mentally ill or guilty but mentally retarded should be "treated, within the limit of state funds appropriated therefor, in such manner as is psychiatrically indicated for his mental illness or mental retardation." Subsection (g) (3) also provides for transfers to the Department of Human Resources where this is necessary.

[6] The state did not contest at the habeas hearing that no appropriate state facility exists for the care of the petitioner.

DECIDED FEBRUARY 23, 1989.

John M. Ott, District Attorney, Michael J. Bowers, Attorney General, William B. Hill, Jr., Senior Assistant Attorney General, Eddie Snelling, Jr., Assistant Attorney General, for appellant.

Larry W. Thomason, for appellee.